UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re                              )
                                   )
RAND HALL,                         )   Case No. 8:04-bk-14150-KRM
                                   )   Chapter 7
    Debtor.                        )
_____)
                                   )
HOME LOAN CORPORATION d/b/a        )
Expanded Mortgage Credit,          )
                                   )
    Plaintiff.                     )
                                   )   Adversary No. 04-567
vs.                                )
                                   )
RAND HALL,                         )
                                   )
    Defendant.                     )
_____)

MEMORANDUM OPINION

Should a debt be excepted from the discharge -- under Section 523(a)(2) of the Bankruptcy Code, for fraud, false pretenses, or use of a materially false writing regarding the debtor's financial condition -- where the debtor knowingly posed as a home buyer to obtain a mortgage loan for the purchase of a home for persons having sub-standard credit? By her own admission, the debtor engaged in five such transactions in which, for a $2,000 fee, she allowed her identity and respectable credit score to be used to obtain

mortgage loans that she did not intend to repay, for the purchase of homes that she did not intend to occupy.

In this case, the debtor obtained first and second mortgage loans from Home Loan Corporation ("Home Loan"), by signing a blank loan application that was later filled in by someone else with materially false statements. Home Loan brought this adversary proceeding to determine whether the debts evidenced by its mortgage notes are excepted from the discharge.

After carefully considering the witnesses' demeanor and testimony, and for the reasons set forth below, the Court concludes that the debtor acted with reckless disregard for the truth and thereby acted with intent to deceive the lender, which reasonably relied on the debtor's material misrepresentations. Accordingly, the debts owed to Home Loan are excepted from the discharge.

### BACKGROUND

The Scheme

The debtor is college-educated. She has previously owned a business and worked as a newspaper editor. At the urging of her adult son, she entered into an arrangement devised by the son's employer, Alternative Home Finance

("AHF"): for a $2,000 fee per deal, she would apply for and obtain a mortgage loan for the purchase of a home that she did not intend to occupy; the "real" purchaser would enter into a one year lease of the home, with an option to purchase it at the end of the lease term after re-establishing acceptable credit.

AHF was supposed to manage the property, collect the rent and pay the debt service on the mortgage loan. The debtor testified that she was told by AHF's principal that she would have no financial obligation on the loans, which would be repaid from the lessees' rent payments. The debtor closed on five home purchases under this arrangement, pocketing a total of $6,000 in fees.[1]

The Mortgage Loans

In this case, the debtor obtained a first and a second mortgage loan for the purchase of a home in Ft. Myers, Florida (the "Property"). She did so by signing a blank loan application that was later filled out and submitted to Home Loan.

---

[1] It is not clear from the record why the debtor was paid for only three of the five transactions.

3

As completed, the initial loan application states that: (1) the debtor was employed as a graphic designer for a company called Cybersite Designs.Com, Inc. ("Cybersite"), earning $6,000 per month; (2) she was receiving another $153 per month from renting out a residence in St. Petersburg; and (3) she intended to occupy the Property as her primary residence. The debtor readily admits that each of these statements in the loan application is false. The debtor never worked at Cybersite; rather, she worked as a network administrator for a business guild, earning only $500 per month. She has no rental income and never intended to occupy the Property.[2]

In due course, the lender sought confirmation of the debtor's employment, by calling the phone number given for Cybersite. Home Loan was told that the debtor worked there. A written verification of employment was also forwarded to Home Loan by the mortgage broker.[3] Home Loan also had the Property inspected and appraised. Home Loan then committed to

---

[2] The property from which the debtor was allegedly deriving rents is the address of her actual residence in St. Petersburg.

[3] It appears this verification was also part of the scheme. AHF and Cybersite have the same street address, but the suite numbers are different. The application was processed through a mortgage broker, Florida Home Loans, d/b/a Millennium Mortgage, which may have been involved in other similar transactions.

loan the debtor $190,000 for the purchase of the Property, evidenced by a $152,000 first mortgage note and a $38,000 second mortgage note.

At the loan closing, on November 18, 2003, the debtor signed a "final" loan application. The title agent testified that the final loan application was not blank when it was presented as part of the package of closing documents. As completed, the final application falsely states that the debtor was employed by Cybersite, earning a combined $6,153 from that employment and the house rental, and intended to occupy the Property as her primary residence.

The debtor maintains that she did not know what the final loan application said, because she signed all of the closing documents -- the two promissory notes, the first and second mortgages, and all of the other documents, including affirmations that she would repay the loans -- without reading them.

Thereafter, AHF never made any of the mortgage payments. The loans went into default.[4]

---

[4] After the closing, Home Loan sold the loan to Countrywide Home Loans ("Countrywide"), which also acted as the servicer. In November 2004, Countrywide notified Home Loan that the mortgage notes were in default and that Countrywide had discovered that the loan applications were materially false. Subsequently, the various elements of AHF's scheme came to light and Countrywide required Home Loan to repurchase the loan.

5

The Bankruptcy Case

The debtor filed her petition for relief under Chapter 7 on July 14, 2004. On September 29, 2004, Home Loan commenced this proceeding to have the debts excepted from the discharge.[5]

The debtor now argues that she never intended to defraud the lender; that she was an unwitting pawn in someone else's fraudulent scheme. She offers the excuses that she did not fill out the initial loan application and that she did not read any of the closing documents before signing them.

DISCUSSION

To except a debt from discharge under Section 523(a)(2), a creditor must prove either that: (A) the debt was incurred as a result of the debtor's false pretenses, false representations, or actual fraud, other than a statement regarding the debtor's financial condition; or (B) the debt was obtained by use of a statement in writing that (1) is materially false, (2) respecting the debtor's financial

---

[5] The amount Home Loan seeks to except from the discharge includes the original loan amount of up to $190,000, plus fees and penalties not yet calculated at the time of trial.

6

condition, (3) was reasonably relied on by the lender, and (4) was made or published with the intent to deceive. 11 U.S.C. § 523(a)(2). Each of these elements must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991); *Equitable Bank v. Miller*, 39 F.3d 301, 304 (11th Cir. 1994).

Under Section 523(a)(2)(A), the lender must establish that the debtor made false representations with the purpose and intent to deceive the lender, the lender relied on such representations, and the lender sustained a loss. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577 (11th Cir. 1986). There is no real dispute that the debtor made actual misrepresentations on which the lender "justifiably" relied.[6] The debtor knowingly posed as something she was not -- the buyer of a home for her primary residence; but, she had no intention of living there. She knowingly applied for, and executed documents to close on, a $190,000 loan; but, she never intended to repay it. Indeed, she knew that with her actual income she did not have the ability to qualify for the loan or

---

[6] *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437 (1995). This level of reliance requires a lesser showing than the "reasonable" reliance standard that is applicable under Section 523(a)(2)(B). Because the record supports the conclusion that Home Loan's reliance on all of the debtor's representations was "reasonable," the lesser standard of reliance required by Section 523(a)(2)(A) is satisfied.

7

make the loan payments. For her pose, she was paid a $2,000 fee. She closed on a similar home purchase the day before the closing of the loan at issue here.

The debtor denies having any intent to deceive the lender. The Court can infer such intent, however, after considering the totality of the circumstances to determine whether the debtor acted with a reckless disregard for the truth. *See Equitable Bank v. Miller (In re Miller)*, 39 F.3d at 305 (intent to deceive, under Section 523(a)(2)(B), may be inferred from debtor's reckless acts); *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1476 (11th Cir. 1985) (holding reckless disregard for the truth or falsity can bar a discharge under Section 523(a)(2)(A)).

Signing documents without reading them is a reckless act. *See Foote v. Albanese (In re Albanese)*, 96 B.R. 376, 379 (Bankr. M.D. Fla. 1989) (intent may be established by the debtor's reckless indifference and disregard of actual facts, such as signing documents without reading them). Signing a loan application in blank is also reckless conduct. The debtor would have had to know that the loan application would be materially false when submitted, since she was not filling it out: there was no one other than the debtor who could have filled it out accurately. Signing the loan application for

submission, without knowing who was filling it out or what information would be inserted, is sufficient evidence of intent to deceive the lender. See *Drehsen v. Bank of St. Petersburg (In re Drehsen)*, 190 B.R. 441, 446 (M.D. Fla. 1995) (debtor's reliance on an accountant to fill out a loan application may constitute reckless disregard for the truth if the completed application contains material misrepresentations); *PNC Bank v. Rodriguez (In re Rodriguez)*, 184 B.R. 467 (Bankr. E.D. Pa. 1995) (submitting forms in blank, without concern or knowledge of their content or completion, amounts to gross recklessness and establishes intent to deceive).

The debtor had the opportunity, at the loan closing, to review the final loan application. Her explanation that she did not read any of the documents that she signed is the very essence of recklessness. The debtor knew that the lender was advancing $190,000 as the direct result of her pose, which included the execution of the closing documents. The debtor may have believed that no one would be injured, but she knew that she was posing as something she was not and taking reckless actions to cause the loan to be made. The notion that the debtor lacked the sophistication to understand what she was doing is not credible, in light of her education,

business experience, and the fact that she was earning $2,000 for her pose.

A creditor's reliance on a statement in writing respecting a debtor's financial condition must be "reasonable." 11 U.S.C. § 523(a)(2)(B)(iii). Home Loan conducted its regular procedure of inquiry for a "Stated Income Loan." It verified the debtor's employment, assets, and credit score. Instead of verifying the debtor's income, the lender required the debtor to certify the truthfulness of her income on the loan applications. In fact, the certification that the debtor signed notified her of potential criminal and civil penalties if the application contained false information. Home Loan contacted the debtor's alleged employer to verify her employment. Home Loan also inspected the Property. Home Loan approved the debtor's $190,000 loan because each criterion for this type of loan was confirmed.

Home Loan had no reason to know that the loan applications were inaccurate. See *Karve Family Ltd. Partnership v. Mowji (In re Mowji)*, 224 B.R. 221, 227 (Bankr. M.D. Fla. 1991)(citing *In re Duncan*, 35 B.R. 323 (Bankr. W.D. Ky. 1983)); *In re Sandlin*, 39 B.R. 936, 938 (Bankr. M.D. Fla. 1984) (creditor's verification of financial information could have been more extensive, but deemed sufficient under the

circumstances; nothing suggested the creditor's precautions fell below the industry's generally accepted standards). In this case, there were no "red flags" that the lender should have investigated further before making the loan.

There is nothing in the record to rebut Home Loan's assertion that it followed appropriate steps and guidelines for making a "Stated Income Loan." Home Loan's reliance on the debtor's loan applications was therefore reasonable.

## CONCLUSION

By her own admission, the debtor engaged in five transactions in which, for a $2,000 fee, she allowed her identity and respectable credit score to be used to obtain mortgage loans that she did not intend to repay, for the purchase of homes that she did not intend to occupy. The debtor signed a blank loan application that was later filled in by someone else with materially false statements. She signed the debt instruments and closing documents which included false representations as to her intention to reside in the property, without reading them. The debtor acted with reckless disregard for the truth and thereby acted with intent to deceive the lender, which reasonably relied on the debtor's

material misrepresentations. Accordingly, the debts owed to Home Loan are excepted from the discharge.

A post-trial conference will be set by separate order to schedule a further hearing to determine the extent of the lender's loss and amount that is excepted from the discharge.

DONE and ORDERED in Tampa, Florida, this 10th day of April, 2006.

_____
K. RODNEY MAY
United States Bankruptcy Judge

Copies Furnished To:

Rand Hall, Debtor, Post Office Box 48973, St. Petersburg, Florida 33743

George A. DuFour, Attorney for Debtor, 4610 Central Avenue, Tampa, Florida 33603

Dennis J. LeVine, Attorney for Home Loan Corporation, Post Office Box 707, Tampa, Florida 33601-0707

Andrea P. Bauman, Trustee, Post Office Box, 907, Highland City, Florida 33846

United States Trustee, Timberlake Annex, Suite 1200, 501 East Polk Street, Tampa, Florida 33602